## Case No. 2,269.

### BYRD v. HARROLD et al.

[18 N. B. R. 433; 26 Pittsb. Leg. J. 128.][1]

District Court, S. D. Georgia. Dec. 2, 1878.

BANKRUPTCY— EFFECT OF FILING VOLUNTARY PETITION—LEVY OF EXECUTION AGAINST THE BANKRUPT ESTATE—CONTEMPT.

1. The moment a voluntary petition is filed, all the property of the bankrupt, in possession or in action, which is included in the inventory and schedules, comes into the prehensory power of the court as fully as if it was in the actual and visible presence of the court, and consequently is under its protection and within its exclusive control.

2. The bankrupt had given certain mortgages upon his exemption property, in each of which he had waived all his homestead and exemption rights under the state constitution and laws, and under the bankrupt act [14 Stat. 522], in and to the property mortgaged, and also his right to a discharge in bankruptcy. The assignee appointed in the voluntary proceedings left the property in the hands of the bankrupt

[1] [Reprinted from 18 N. B. R. 433, by permission. 26 Pittsb. Leg. J. 128, contains only a partial report.]

as custodian until he could procure the schedules and proceed to administer the estate. The mortgages were afterwards foreclosed, and the executions therefor levied on the mortgaged property, which had been returned in the schedules. The assignee never had actual possession of the property levied on. *Held*, that the waiver could not be enforced until the property was designated and allotted to the bankrupt by the assignee; that the levy was a positive contempt of the jurisdiction of the court, and was not justified by the ignorance of the mortgagees and the sheriff as to the bankruptcy of the mortgagor and the appointment of the assignee, as they might easily have obtained knowledge of these facts.

[In equity. Bill by William A. Byrd, assignee in bankruptcy of William Usry, against Harrold, Johnson & Co., and J. W. Mize, sheriff of Sumter county, to restrain the defendants from further interference with the bankrupt estate and for other relief. An injunction issued, and, in accordance with the prayer of the bill, a rule was entered adjudging the defendants guilty of contempt. The defendants answered, and moved to set aside the rule for contempt, and to dissolve the injunction, but the court denied the motion, and granted the prayer of the bill.]

Mr. Hinton, for plaintiff.
Mr. Hawkins, for defendants.

ERSKINE, District Judge. The bill alleges that Usry was declared a bankrupt on the 24th of September, 1878, and that the plaintiff was appointed his assignee on the 23d October, and a deed of assignment of the effects of the bankrupt was made to him on the same day; that he took possession of the estate, leaving the same in the hands of Usry, as his custodian, until he, the assignee, could procure the schedules and proceed to administer the estate; that Harrold, Johnson & Co., on the 25th of said October, foreclosed several mortgages against said bankrupt in Sumter superior court, and caused the executions therefor to be levied on certain property, returned by the bankrupt in his schedules, by one Mize, sheriff of said county, and who is preparing and threatening to sell the property so levied on and seized by him; that all of said defendants had at the time full knowledge of the bankruptcy of Usry and of the appointment of plaintiff as his assignee, and that the defendants, by their said acts, have deprived plaintiff, as such assignee, of "power to set apart and assign to the bankrupt his homestead and exemption allowed by law." He prayed an injunction against all the defendants to restrain them from selling under or proceeding further with said fi. fas., and from making any other or further levies, or from otherwise interfering with the property of said bankrupt, and he also prayed that all of said defendants may be ordered to show cause why they should not be held in contempt for seizing said property, &c. The court granted the prayers of the plaintiff.

The defendants appeared, by counsel, at

this term of the court, and asked that the injunction be dissolved, and the rule nisi for contempt set aside. They put in answers and affidavits. The answers admit the truth of the material allegations in the bill, with some slight qualifications, unnecessary to mention, as they have, in writing, agreed on the fact as to the possession of the property when the levies were made, to wit: "That the assignee never had actual possession of said property so levied on, nor did he go on the plantation after his appointment, until after the levy thereon by the sheriff by virtue of the mortgage fi. fas."

The plaintiff and the bankrupt state in their affidavits that the defendants, at the time the levy was made, knew of the bankruptcy of Usry, and the appointment of the plaintiff as such assignee. The sheriff in his affidavit admits that when he made the levy he had heard of the bankruptcy of Usry, but did not know that Byrd had been appointed his assignee; and further, that Byrd was not in possession of the property at the time of the levy and seizure. Accompanying the answers of the defendants was a paper put in as a demurrer to the jurisdiction of the court, which alleged, among other matters, that the property so levied on is exemption property of the bankrupt, and by a clause in each mortgage Usry had waived all his homestead and exemption rights under the state constitution and laws, and the bankrupt act, in and to the property mortgaged, and also to his right to a discharge in bankruptcy, and that, therefore, by reason of the mortgages on the property exempted by virtue of the provisions of the bankrupt law, and also by reason of the said several waivers, this property does not come into this court, nor pass to the assignee; but, on the contrary, he has no right to its custody or to administer it; "but his only duty," says the defendant's demurrer, "as assignee, concerning the exempted property of the bankrupt, is to designate the same, and leave the bankrupt and his creditors to litigate the matter between themselves; it is no concern of his."

The bankrupt, in his voluntary petition and schedules, has returned under oath this very property, and claims it as excepted from the operation of the bankrupt act by the limitation inserted in section 5045 of the Revised Statutes United States. The moment Usry filed his voluntary petition to be declared a bankrupt, all the property, in possession or in action, which he included in his inventory and schedules, came, by the effect of the bankrupt law, into the prehensory power of this court as fully as if it was the actual and visible presence of the court; consequently it is under its protection and within its exclusive control. And this construction of the statute is well settled by numerous unshaken decisions of the federal courts. Buck v. Colbath, 3 Wall. [70 U. S.] 334; In re Henry Vogel [Case No. 16,983]; In re Enoch Steadman [Id. 13,330]; Hutchings v. Muzzy

Iron Works [Id. 6,952]; New Lamp Chimney Co. v. Ansonia Brass & Copper Co. [91 U. S.] 656. This being so, any interference, by instituting suits in state tribunals to affect the property, or by levying on it, seizing it, or in anywise interfering with it by state court processes, except by permission of the bankrupt court, is a direct infraction of its authority, and violation of the law. But suppose that, at the time of the levy and seizure, neither the sheriff nor any of the other defendants had actual knowledge of the bankruptcy of Usry and the appointment of the assignee, they could easily have obtained it, and their ignorance—if such was the case—cannot justify the levying of the mortgage executions. For when this court declared Usry a bankrupt, the judgment was in the nature of a decree in rem as to the status of the property returned to his voluntary petition, and was notice to all the world.

In assuming the right to foreclose the mortgages in the state court, and to seize the mortgaged property, the defendants endeavor to strengthen their argument by the supplemental theory that Usry had, in the mortgages, waived claim to the exemptions allowed to bankrupts by the state and federal laws. Now, a waiver may be said to be a relinquishment of a known claim or right; it is here in the nature of an obligatory intransitive covenant not to claim the particular mortgaged property, should the undertakings in the mortgages to pay the debt be broken. It was a personal privilege which Usry possessed prior to the filing of the voluntary petition, to fix the condition of his absolute or potential rights as he pleased, so that he did not invade the rights of third persons. The waiver appertained to this identical property, but it could not be enforced until it was designated and allotted to the bankrupt by the assignee, and when that was done and the report of the assignee was confirmed by the court, those to whom the waiver, under the state constitution and laws was made, must, if citizens of this state, pursue Usry in the state forum to enforce it. As already seen, it is admitted in the defendant's pleading that it is the duty of the assignee to designate the homestead and exemption property and leave the bankrupt and his creditors to litigate between themselves. This is substantially in accordance with the view expressed by Mr. Justice Bradley in Re Bass [Case No. 1,091]. He says: "Nor does it make any difference that the homestead was not ascertained or set out in severalty until after the proceedings in bankruptcy were commenced, or until after the conveyance to the assignee was executed. Whenever properly claimed and designated, the exemption protects it, and the exception created by the bankrupt act relates back to the conveyance and limits its operation. * * * It was his [the assignee's] business to report to the court whether the property claimed as homestead was or was not within

the limit of value which the laws of Georgia allow for that purpose," etc. And the same rule obtains in designating and reporting the articles allowed by the acts of congress to bankrupts. See Rev. St. U. S. § 5045; rule xix., and form No. 20.

Under the state of facts in the record before me, the question may here be asked: How could Byrd, the plaintiff in this bill, and assignee of Usry, the bankrupt, perform his official duties, as such assignee in bankruptcy—how could he value, designate, allot or set apart the exemption allowed by law to the bankrupt and his family, and report his actings in the premises to this court, when the property returned by the bankrupt in his schedules, and claimed by him as exempt—a part of which property might, nevertheless, on investigation, be found to be assets for distribution among his general creditors—had been previously seized and taken from the rightful possession of the assignee, or from the hands of Usry, the custodian; in a word, from the possession of this court? Such conduct on the part of the defendants cannot be vindicated; it was a positive contempt of the jurisdiction of this court, and I so decide.

Therefore, it is ordered and decreed that said defendants, Harrold, Johnson & Co., and J. W. Mize, sheriff of said Sumter county, and every one of them do, within ten days from the filing of the decree in this cause (which decree counsel will prepare and submit to the court) deliver to the said assignee the identical property, so seized and possessed as aforesaid by said defendants, and named, described, and enumerated in said bill of complaint; and if any of said property has been sold, or otherwise disposed of, or wasted, the full value thereof must be paid to the assignee within the period of time last mentioned. In default thereof the rule nisi will be made absolute, and attachments issue. It is further decreed, that the motion to dissolve the injunction be, and it is hereby, denied. It is further ordered, that the defendants pay the costs of this proceeding, to be taxed by the clerk.